UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMIE LEE HARRISON,

      Plaintiff,      Case No. 1:09-cv-333

v.              Honorable Gordon J. Quist

WILLIAM PITTMAN et al.,

      Defendants.
_____/

## OPINION

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's due process claims against Defendants William Pittman, (Unknown) Simpson, B. Simmons and (Unknown) Kipp for failure to state a claim. The Court will also dismiss Plaintiff's equal protection claim against William Pittman for failure to state a claim. The Court, however, will serve Plaintiff's First

Amendment retaliation claims against Defendants William Pittman, (Unknown) Simpson, B. Simmons and (Unknown) Kipp.

## Discussion

I. Factual allegations

Plaintiff Jimmie Lee Harrison is presently incarcerated at the Newberry Correctional Facility but complains of events that occurred at the Riverside Correctional Facility (RCF). He sues the following RCF employees: Assistant Resident Unit Supervisor (ARUS) William Pittman, Corrections Officer (Unknown) Simpson, Corrections Officer B. Simmons, and Assistant Deputy Warden (ADW) (Unknown) Kipp.

In his *pro se* complaint, Plaintiff complains of three constitutional violations. First, Plaintiff argues that Defendant Pittman retaliated against him for filing grievances in violation of Plaintiff's First Amendment rights. (Am. Compl. at 3, docket #13.) On July 7, 8 and 25, 2006, Plaintiff submitted grievances against Defendant Pittman for failing to place his fiancé on Plaintiff's visitors' list and for threatening Plaintiff. (Am. Compl. at 6, docket #13; Exs. G.2, G.11, G.21 to Compl., docket #1.) Plaintiff alleges that Defendant Pittman retaliated in three ways: by denying Plaintiff's fiancé access to visit Plaintiff even though Plaintiff's fiancé was previously approved to visit Plaintiff in June 2006, by threatening Plaintiff to "[r]ide the Plaintiff [o]ut" by transferring him to another unit and by having Officers Simpson and Simmons do his "[d]irty work." (Am. Compl. at 3-4, docket #13.)

On July 30, 2006, Plaintiff received a major misconduct ticket from Officer Simpson for insolence. (Am. Compl. at 4, docket #13; Ex. F to Compl., docket #1.) The major misconduct ticket was ultimately dismissed. (Am. Compl. at 6, docket #13; Ex. F to Compl., docket #1.) Soon thereafter, Plaintiff filed a grievance on Officer Simpson for retaliating against Plaintiff. (Exs. G.29,

G.30 & G.31 to Compl., docket #1.) On September 7, 2006, Officer Simpson issued a minor misconduct ticket to Plaintiff for violating several prison rules. Plaintiff was found not guilty of that minor misconduct charge. (Am. Compl. at 7, docket #13; Ex. G to Compl., docket #1.) Officer Simmons gave Plaintiff two major misconduct tickets on September 21, 2006. The major misconduct tickets were for insolence and interfering with the administration of rules, both of which Plaintiff was found not guilty. (Am. Compl. at 7, docket #13; Exs. K, L, M & N to Compl., docket #1.) On September 21, 2006, Officer Simpson also gave Plaintiff a major misconduct ticket for disobeying a direct order and for being out of place. (Am. Compl. at 7, docket #13; Ex. O to Compl., docket #1.) After a hearing, Plaintiff was found guilty of both charges and was given ten days of toplock.[1] (Am. Compl. at 7, docket #13; Ex. P to Compl., docket #1.) On October 9, 2006, Plaintiff complained to ADW Kipp regarding ARUS Pittman's and Officers Simpson and Simmons' retaliation. (Am. Compl. at 8-9, docket #13.) The next day, Plaintiff received a minor misconduct ticket from Officer Simpson for violating a prison smoking rule. Plaintiff was found guilty of that minor misconduct ticket and received five days of toplock. (Am. Compl. at 8, docket #13; Ex. Q to Compl., docket #1.)

Second, Plaintiff claims that ADW Kipp retaliated against Plaintiff for filing several grievances by removing Plaintiff from the "Honor Block." (Am. Compl. at 9, docket #13.)

Third, Plaintiff alleges that Defendant Pittman violated Plaintiff's due process and equal protection rights by denying Plaintiff visitation with his fiancé. (Am. Compl. at 6.)

For relief, Plaintiff requests that all misconduct tickets be expunged from Plaintiff's prison file. Plaintiff also requests punitive and compensatory damages.

---

[1] "Toplock" is described as confinement to a prisoner's quarters. *See* MICH. DEP'T. OF CORR., Policy Directive 03.03.105, Att. D (effective Feb. 1, 2009).

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process Clause - Major Misconduct Charges

Plaintiff alleges that Officers Simpson and Simmons issued several fraudulent major and minor misconduct tickets against him. This section only concerns Plaintiff's major misconduct convictions. Plaintiff requests that his misconduct convictions be expunged. For all of Plaintiff's major misconduct tickets except one, Plaintiff was found not guilty of the charges or the charges were dismissed. On September 21, 2006, Plaintiff received a major misconduct ticket from Officer Simpson for disobeying a direct order and being out of place. (Ex. O to Compl., docket #1.) After a hearing, Plaintiff was found guilty of both charges and received ten days of toplock.[2] (Am. Compl. at 7, docket #13; Ex. P to Compl., docket #1.) Plaintiff appears to allege that the filing of the September 21, 2006 major misconduct charge and his conviction on that charge violated his right to due process.

The starting point for any discussion of the procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. "[N]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass,* 63 F.3d 483, 486 (6th Cir. 1995) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985)). The Supreme Court in *Hill* held that the requirements of due process are

---

[2]Under Michigan law, a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated good-time credits in certain cases. *Id.*

satisfied if "some evidence" supports the prison disciplinary board's decision to revoke good-time credits. *Hill*, 472 U.S. at 455. In determining whether a decision of a prison disciplinary board is supported by "some evidence," a federal court is "not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455). "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455-56) (emphasis added). Moreover, the Constitution does not require that the evidence logically preclude any conclusion but the one reached by the hearing officer in the disciplinary proceeding. *Hill,* 472 U.S. at 456; *see also Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003), *aff'd*, 110 F. App'x 491 (6th Cir. 2004). A hearing officer in a prison disciplinary proceeding is not required to find the prisoner guilty beyond a reasonable doubt, or find that guilty was the only reasonable interpretation of the evidence. *Thomas v. Marberry,* No. 06-cv-13282, 2007 WL 1041250, at *2 (E.D. Mich. Apr. 4, 2007) (citing *Mullins v. Smith,* 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998)).

The requirements of *Wolff* were satisfied in this case. Plaintiff does not dispute that he was given advance written notice of charges at least 24 hours before the disciplinary hearing, that he was permitted to present evidence in his defense and that he was provided with a hearing report, which contained a statement of evidence relied on by the hearing officer and the reasons for the decision. As to the out of place and disobeying a direct order charges, the hearing officer made the following findings of fact:

> [H]earing officer finds based on the statement of Officer Simpson that during count time prisoner was observed sitting at his desk. Prisoner was asked why he was not on the bunk and he stated the officer did not call it properly. Hearing officer finds the charge sustained as prisoner was absent from his required location during count and per the officer count had been announced and the count light was on. Further[,]

> as prisoner had been here more than four months[,] he was perfectly aware when count times were and he should have either been on his bunk, listening for count to be called or checking the count light. Charge sustained.
>
> [H]earing officer also finds based on the statement of [O]fficer Simpson that prisoner was told to sit on his bunk, prisoner stated "Why are you telling me to move when others were off their bunk too[.]"[] Prisoner was again told to sit on the bunk and he did not do so. Another prisoner then told prisoner to get on his bunk and he did so. Hearing officer finds based on prisoner[']s reply that he heard and understood that he was to get on this bunk and he failed to comply in a timely fashion. Charge sustained.

(Ex. P to Compl., docket #1.) The evidence showed that Plaintiff was out of place and disobeyed Officer Simpson's direct order to sit on Plaintiff's bunk. The hearing officer reasonably concluded that Plaintiff was guilty of the offenses.

To the extent Plaintiff claims that Officer Simpson should not have written the ticket, he fails to state a claim. "[T]his court will not interfere with the discretion of prison authorities to define offenses under their internal rules and to assign offenses in particular cases." *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003) (citing *Turney v. Scroggy,* 831 F.2d 135, 139-40 (6th Cir. 1987)). Accordingly, Plaintiff fails to state a due process claim against Defendant Simpson arising from his major misconduct convictions.

### B. Due Process Clause - Minor Misconduct Charges

Plaintiff claims that a minor misconduct ticket issued by Officer Simpson on October 10, 2006 should be expunged. Again, Plaintiff received several minor misconduct tickets from Officers Simpson and Simmons. Plaintiff, however, was only convicted of one minor misconduct. Plaintiff received the minor misconduct ticket on October 10, 2006 for violating prison rules against smoking. (Ex. Q to Compl., docket #1.) After holding a hearing, the hearing officer found Plaintiff guilty and Plaintiff received five days of toplock. (*Id.*) The hearing officer gave the following reasons for his decision:

> Guilty based on staff['s] observation and evidence of lit cigarette that was burnt on one end. Witness states [that] he was in bathroom with [Plaintiff] and the cigarette was not lit. Staff had no reason to lie on this misconduct. This is a smoking related misconduct and tobacco sanctions apply.

(*Id.*) In his defense, Plaintiff stated that the cigarette was not lit. (*Id.*)

The Due Process Clause of the Fourteenth Amendment provides that no state "shall deprive any person of life, liberty, or property without due process of law." U.S.C.A. Const. Amend. 14. Thus, the Constitution is implicated only if a person is deprived of an interest protected by the Due Process Clause. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). Therefore, a prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 486.

According to the Michigan Department of Corrections, punishments for minor misconduct violations include up to five days of "toplock," fifteen days' loss of privileges, assignment to up to twenty hours of extra duty, counseling, reprimand and restitution. MICH. DEP'T. OF CORR., Policy Directive 03.03.105, Att. D (effective Feb. 1, 2009). None of the possible sanctions for minor misconduct convictions amounts to an atypical or significant hardship. *See Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000). Plaintiff received five days of toplock for his minor misconduct conviction. (Ex. Q to Compl., docket #1.) Plaintiff does not allege that he lost any good-time credits as a result of his minor misconduct conviction. Because Plaintiff did not suffer an infringement of any liberty interest as a result of his minor misconduct charge, he fails to state a claim against any Defendant for a violation of his due process rights. *See Green*, 2000 WL 876765, at *2 ("Green had no due process liberty interest in the minor misconduct hearing because he did not allege any punishment that affected the duration of his confinement, or that constituted an atypical and significant hardship."); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug.12, 1999) ("Staffney suffered no loss of good time credits as a result of his minor misconduct conviction and the sanctions he received do not represent a liberty interest recognized by the constitution.").

### C. Due Process Clause - Visitation

Plaintiff argues that he was denied his rights under the Due Process Clause when he was deprived of visitation by his fiancé. As stated above, procedural due process rights arise only when a plaintiff holds a constitutionally protected liberty interest. *Sandin,* 515 U.S. at 484. Plaintiff does not have a liberty interest in unfettered visitation with his fiancé. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460-61 (1989) (prisoners do not have an implicit due process right to unfettered visitation); *Bazzetta v. McGinnis*, 430 F.3d 795, 804-05 (6th Cir. 2005) (finding that a

ban on virtually all visitation for prisoners who have been found guilty of two or more major misconduct charges for substance abuse does not rise to a due process violation); *Cook v. Cook,* No. 96-3419, 1997 WL 121207, at *1 (6th Cir. Mar. 14, 1997) (Defendant did not violate the prisoner's due process rights by denying him visitation with his daughter, who was also the victim of the prisoner's crime); *Kanitz v. Cooke,* Nos. 03-cv-10180, 03-cv-10322, 2008 WL 2218259, at *5 (E.D. Mich. Mar. 5, 2008) ("Plaintiffs have no constitutional liberty interest in visitation.").

Plaintiff't's fiancé was approved for Plaintiff's visitors' list on June 13, 2006. (Ex. B to Compl., docket #1.) However, Plaintiff's fiancé could not visit Plaintiff until she removed her name from another prisoner's visitors' list, who was not an immediate family member.[3] (Ex. G.7 to Compl., docket #1.) The denial of visitation to Plaintiff's fiancé was only temporary. As soon as Plaintiff's fiancé removed her name from the other prisoner's visitors' list, she would be able to visit Plaintiff. Because a temporary deprivation of visitation privileges does not "impose[] an atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, Plaintiff fails to state a due process claim against Defendant Pittman.

### D. Equal Protection Clause - Visitation

Plaintiff claims that Defendant Pittman's denial of visitation by Plaintiff's fiancé violated his rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that

---

[3]Under MICH. DEP'T. OF CORR., Policy Directive 05.03.140(J)(5) (effective Oct. 1, 2007), a proposed visitor cannot be on another prisoner's approved visitors' list unless that prisoner is an immediate family member. A visitor may only be on the visitors' list of one prisoner who is not an immediate family member. (*Id.*)

he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right to visitation under the Constitution.

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Defendant Pittman refused to allow Plaintiff's fiancé to visit Plaintiff under Policy Directive 05.03.140(J)(5) because she was listed on another prisoner's visitors' list, who was not an immediate family member. As previously stated, Policy Directive 05.03.140(J)(5) provides that a visitor may only be on the visitors' list of one prisoner who is not an immediate family member. MICH. DEP'T. OF CORR., Policy Directive 05.03.140(J)(5). A jail policy prohibiting visitation by a person who is already on another non-family member's prisoner's visitors' list is certainly rationally related to a legitimate penological interest. Someone who is visiting several different prisoners in a prison could pose a substantial security risk. Security is a legitimate penological goal. *See Akers v. McGinnis,* 352 F.3d 1030, 1048-49 (6th Cir. 2003) (citing *Overton v. Bazetta,* 539 U.S. 126, 133

(2003)). Further, Plaintiff had other means of communicating with his fiancé such as written correspondence or telephone calls. *Jackson v. Allegan County Jail,* No. 1:07-cv-1086, 2008 WL 540875, at *1 (W.D. Mich. Jan. 24, 2008) (citing *Dewitt v. Wall*, No. 01-65 T, 2001 WL 1136090, at *6 (D.R.I. July 31, 2001) and *Young v. Vaughn*, No. Civ. A. 98-4360, 2000 WL 1056444, at *2 (E.D. Pa. Aug.1, 2000)). Therefore, Plaintiff fails to state an equal protection claim.

### E. First Amendment Retaliation

Plaintiff alleges that Defendants retaliated against him for filing grievances in violation of his First Amendment rights. At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to state a First Amendment retaliation claim against Defendants Pittman, Simpson, Simmons and Kipp.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's due process claims against Defendants William Pittman, (Unknown) Simpson, B. Simmons and (Unknown) Kipp for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's equal protection claim against William Pittman for failure to state a claim. The Court, however, will serve Plaintiff's First Amendment retaliation claim against Defendants William Pittman, (Unknown) Simpson, B. Simmons and (Unknown) Kipp.

An Order consistent with this Opinion will be entered.


Dated: July 8, 2009                           /s/ Gordon J. Quist
                                              GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE