UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMIE LEE HARRISON,

        Plaintiff,

v.

WILLIAM PITTMAN, *et al.*,

        Defendants.

                                      /

Case No. 1:09-cv-333

Hon. Gordon J. Quist

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 30).

**I.    Background**

Plaintiff's *pro se* amended complaint seeks monetary damages from four employees at the Riverside Correctional Facility (RCF): Assistant Resident Unit Supervisor (ARUS) William Pittman; Corrections Officer Simpson; Corrections Officer Simmons; and Assistant Deputy Warden (ADW) Kipp. On initial screening, the court dismissed all claims against defendants, except for plaintiff's claim that defendants retaliated against him for filing grievances. *See* Opinion and Order (docket nos. 14 and 15).

**II.    Legal standard**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim,

a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Plaintiff's retaliation claims

#### A. Legal Standard

To prove a First Amendment retaliation claim, plaintiff must establish that:

> (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by his protected conduct.

*Vereecke v. Huron Valley School District*, --- F.3d ---, 2010 WL 2499433 at *6 (6th Cir. 2010), *citing Scarbrough v. Morgan County Board of Education*, 470 F.3d 250, 255 (6th Cir. 2006) and *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001), *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "[B]are allegations of malice do not suffice to establish a constitutional claim." *Ziegler v. McGinnis*, 32 Fed. Appx. 697, 698 (6th Cir. 2002), *citing Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). Because "[a]llegations of government misconduct are easy to allege and hard to disprove," the court "must insist on a meaningful evidentiary showing." *National Archives and Records Administrration v. Favish*, 541 U.S. 157, 175 (2004) (internal citation and quotation marks omitted).

#### B. ARUS Pittman

Plaintiff alleged that he engaged in protected activity by (1) filing a grievance against a Michigan Department of Corrections (MDOC) employee at the Southern Michigan Correctional

3

Facility (JMF) and (2) filing a grievance against ARUS Pittman. Amend. Compl. at p. 3.[1] Plaintiff alleged three incidents of retaliation against this defendant. First, that Pittman retaliated against him by removing his fiancee (Ms. Lewis) from the prison's visitor's list, even though Pittman had approved Ms. Lewis as a visitor on June 13, 2006. *Id.* Second, that Pittman threatened to "[r]ide the Plaintiff [o]ut" by transferring him to another unit. *Id.* at pp. 3-4. Third, that Pittman threatened to have Corrections Officers Simpson and Simmons do Pittman's "[d]irty work." *Id.*

In his affidavit, Pittman stated that he processed a visiting application for Ms. Lewis on June 13, 2006, in his capacity as an ARUS. *See* Pittman Aff. at ¶ 6 (docket no. 31-3); MDOC Visiting Application attached as Exh. B to Compl. (docket no. 1-2).[2] Pittman stated that another staff member, who is not identified on the form, denied the application because Ms. Lewis was on the visiting list for two other prisoners. Pittman Aff. at ¶ 7. The visiting history of Ms. Lewis indicates that in 2004, she was visiting prisoner Moore #232953 (identified as her friend) and prisoner Lewis #156554 (identified as her brother). Pittman Aff. at ¶ 8; Exh. A-1 attached to Aff. The applicable policy directive provides that one criteria for obtaining approval of a visitor is that the proposed visitor is not on another prisoner's approved visitors list "except as an immediate family member." Pittman Aff. at ¶ 8 citing PD 05.03.140 J.5. "In other words, a visitor may be on the list of all prisoners who are immediate family members, but only on the list of one prisoner who is not an immediate family member." *Id.* As a courtesy to Ms. Lewis and plaintiff, Pittman called

---

[1] The "Statement of Claim" in plaintiff's amended complaint commences at the second "page 3" of the document. *See* docket no. 13 at p. 5 of 15. Because the numbered and lettered paragraphs within the "Statement of Claim" appear to be random and at times duplicative, the court will cite to the page number of the "Statement of Claim."

[2] The parties rely, in part, on the 116 pages of exhibits attached to plaintiff's original complaint. *See* docket nos. 1-2 and 1-3.

Lewis and informed her to remove herself from the other prisoners' visiting lists and to resubmit a new visiting application for plaintiff. Pittman Aff. at ¶ 9.

Plaintiff subsequently filed grievances against ARUS Pittman dated July 7, 2006 (RCF 060700719028A) and July 8, 2006 (RCF060700717017B) with respect to the denial of Ms. Lewis' visiting application. Pittman Aff. at ¶¶ 10-11; Exhs. G-2 and G-11 attached to Compl. (docket no. 1-2). In the July 7, 2006 grievance, which listed an incident date of June 13, 2006, plaintiff stated that ARUS Pittman gave him "false information" that Ms. Lewis was on other inmate visiting lists. *See* Exh. G-2. In the July 8, 2006 grievance, plaintiff claimed that Pittman was "very unprofessional," threatened to move him or "ride him out," and that such action "would be retaliation." *See* Exh. G-11. On July 25, 2006, plaintiff filed his third grievance against ARUS Pittman, claiming that when he talked to Pittman about two other grievances, Pittman threatened to ride him out to another unit and have other officers do his "dirty work." Pittman Aff. at ¶ 13; Exh. G-21 attached to Compl. (docket no. 1-2).

        **1.**     **The JMF grievance**

"Exhibit A" attached to plaintiff's original complaint is grievance no. JMF 060701380028e (the "JMF grievance"). *See* Exh. A (docket no. 1-2). This grievance, which was dated May 28, 2006, grieves an incident that occurred two years prior to that date, i.e.,"6-26-04 or about." *Id.* This grievance does not name ARUS Pittman. *Id.* In his affidavit, Pittman states that he has no knowledge of the response to the grievance, was not contacted by the grievance coordinator at JMF and was not instructed to supply plaintiff with any information in response to

5

the grievance. Pittman Aff. at ¶¶ 3-4.[3] Plaintiff has not demonstrated a causal connection between the JMF grievance and the removal of Ms. Lewis from the visiting list. It is undisputed that ARUS Pittman approved Ms. Lewis' visiting application about two weeks *after* plaintiff filed the JMF grievance. Pittman Aff. at ¶ 6; Exh. B attached to Compl (docket no. 1-2). Pittman's act of approving a visitor for plaintiff could not be construed as an adverse action. Pittman later contacted Ms. Lewis after another staff member denied her visiting application. In summary, plaintiff has failed to demonstrate a causal connection between the filing of the JMF grievance and the denial of Ms. Lewis' visiting application.

Furthermore, there is no causal connection between the JMF grievance and any of Pittman's alleged actions: the JMF grievance was filed at a different facility; it grieved plaintiff's request for a transfer to level 1 made in 2004; and it did not name Pittman. To allow plaintiff to rely on this unrelated JMF grievance as the basis for litigating a retaliation claim against Pittman would render the causation requirement meaningless. Accordingly, the court should grant ARUS Pittman's motion for summary judgment for the alleged retaliation arising from the JMF grievance.

**2.      The RCF grievances dated July 7th, July 8th and July 25th, 2006**

ARUS Pittman does not provide any meaningful analysis to support his claim for summary judgment on the alleged retaliation arising from the three grievances filed against him in July 2006. *See* Defendants' Brief at pp. 4-5, 10-11. Rather, defendants merely state that "Plaintiff has not met his burden of showing that any actions by ARUS Pittman were taken in retaliation for grievances." *Id.* at p. 11. Although Pittman's counsel has raised the issue in a perfunctory manner,

---

[3] In his affidavit, Pittman refers to the JMF grievance as both "exhibit A-1" and "Complaint page 3, paragraph A in reference to exhibit A." Pittman Aff. at ¶¶ 3-4. The court cannot locate an "exhibit A-1" other than the exhibit attached to Pittman's affidavit (which is not a grievance).

the court concludes that his motion should be granted. The alleged retaliation against Pittman involved two threats to transfer plaintiff to another unit or "ride him out." Amend. Compl. at p.3. These threats do not constitute an adverse action sufficient to support a retaliation claim.

"[A] prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Department of Corrections*, 196 F. Appx. 350, 358 (6th Cir.2006) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir.2005). For this reason, a transfer from one prison to another generally "cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Hix*, 196 Fed. Appx. at 358. However, "the transfer of a prisoner may rise to the level of unconstitutional retaliation where there are foreseeable consequences to the transfer that would inhibit the prisoner's access to courts." *Id.* Plaintiff has not presented any evidence of that there were any foreseeable consequences that a threatened transfer to another unit in the correctional facility would affect his access to the courts. *See, e.g., Siggers-El*, 412 F. 3. at 702 (finding that such foreseeable consequences existed where the plaintiff lost his "high paying job" needed to pay his attorney and the move to another facility "made it more difficult for his attorney to visit with or represent him because he was moved further away from her"). Accordingly, ARUS Pittman's motion for summary judgment should be granted with respect to the acts of retaliation which allegedly occurred after plaintiff filed the three grievances against Pittman in July.

C.   **RUO Simmons and RUO Simpson**

Plaintiff claims that both RUO Simmons and RUO Simpson retaliated against him when they performed Pittman's "dirty work" by writing plaintiff misconduct tickets.

7

### 1. Dismissed major misconducts

#### a. RUO Simmons

RUO Simmons wrote plaintiff two major misconduct tickets on September 21, 2006. The first misconduct involved insolence when plaintiff told Simmons that "You need to stop being a 'yes-man' for Simpson." Simmons Aff. at ¶ 4 (docket no. 31-4). The second misconduct ticket was issued for interference with the administration of rules, which is defined as "acts intending to impede, disrupt, or mislead the disciplinary process for staff or prisoners, including failure to comply with a loss of privileges sanction imposed by a hearing officer." *Id.* at ¶ 6. This ticket arose from plaintiff's argument with ARUS Calvin about receiving the insolence ticket from Simmons. *Id.* Simmons wrote the interference ticket because he felt that plaintiff "was attempting to impede the disciplinary process" by having an ARUS tell Simmons "not to write the misconduct for Insolence." *Id.* Plaintiff alleged that these were "bogus tickets" written in retaliation for filing grievances against ARUS Pittman. *Id.* at ¶ 9; Amend. Compl. at p. 5. The record reflects that plaintiff was found not guilty of these two tickets. *See* Major Misconduct Hearing Reports Exhs. L and N attached to Compl (docket no. 1-2).[4] With respect to the insolence ticket, the hearing officer found that while the prisoner may have interrupted RUO Simmons, "his words were not of a profane or even necessarily inappropriate [sic] and the do not [unintelligible] the level of insolence." Exh. L. The interference with administration of rules ticket involved plaintiff's statement to ARUS Calvin that "He [i.e., Simmons] can't write me a ticket for insolence unless he twists his words, if he can write me, then I can write him one." Exh. N. The hearing officer found that "while prisoners [sic]

---

[4] The copies of the major misconduct tickets are of poor quality and illegible. Exhs. K and M attached to Compl. (docket no. 1-2).

words were directed at the officer and were in relation to the officer writing a misconduct it is difficult how this could impede or mislead the disciplinary process and his making such a statement alone is not sufficient to show he is disrupting the officer in writing a ticket as he was not even talking to the officer." *Id.*

Plaintiff has presented no evidence to establish a causal connection between the three grievances written against ARUS Pittman in July 2006, and the two dismissed misconduct tickets issued by RUO Simmons.

> The third element of a First Amendment retaliation claim requires the plaintiff to prove "a causal connection between the protected conduct and the adverse action." *Thaddeus-X*, 175 F.3d at 399. When assessing motive in the context of a summary judgment motion, "[B]are allegations of malice [do] not suffice to establish a constitutional claim." *Crawford-El v. Britton*, 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1988). This court has held that "[c]ircumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Thaddeus-X*, 175 F.3d at 399.

*Vereecke*, 2010 WL 2499433 at *6. Plaintiff has presented no circumstantial evidence to establish that RUO Simmons was motivated to issue him two tickets on September 21, 2006, in part because plaintiff filed grievances against Pittman two months earlier. Plaintiff's bare allegation that Simmons wrote the tickets because he was performing Pittman's "dirty work" does not suffice to establish a federal constitutional claim. *Vereecke*, 2010 WL 2499433 at *6. Accordingly, RUO Simmons should be granted summary judgment with respect to the dismissed misconduct tickets.

    **b.**    **RUO Simpson**

Plaintiff's retaliation claim against RUO Simpson is difficult to locate within the pleadings. It appears that plaintiff is referring, in part, to a major misconduct ticket from Simpson dated July 30, 2006. Amend. Compl. at p. 6. This ticket was for insolence, because plaintiff "became slightly argumentative" when told that the pool table was closed "and threw the pool stick

9

on the pool table." Simpson Aff. at ¶ 3 (docket no. 31-5).[5] The misconduct was dismissed by the reviewing lieutenant because he "felt the charge did not fit." *Id.* at ¶ 4. While this misconduct was issued on July 30, 2006, the same month as plaintiff filed his grievances against ARUS Pittman, the court does not consider the timing of the alleged misconduct to establish retaliatory motive. "The law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim." *Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007). Based on the record, RUO Simpson did not charge plaintiff with the appropriate misconduct. The fact that plaintiff filed grievances against ARUS Pittman commencing on July 7, 2006, does not establish as a genuine issue of material fact that every misconduct issued by a corrections officers after that date was in retaliation for those grievances. Accordingly, RUO Simpson should be granted summary judgment with respect to the dismissed misconduct tickets.

### 2. Other major misconduct tickets

Plaintiff's alleged that both RUO Simmons and RUO Simpson issued him a number of other misconduct tickets, for which was found guilty. Plaintiff cannot claim retaliation based upon these misconduct tickets. "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2005), quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994). Accordingly, RUO Simmons and RUO Simpson are entitled to summary judgment with respect to the misconduct tickets issued to plaintiff for which he was found guilty.

---

[5] The misconduct ticket accompanying plaintiff's complaint is illegible. *See* Exh. F to Compl. (docket no. 1-2).

### D. ADW Kipp

Plaintiff alleged that ADW Kipp retaliated against him because Kipp moved plaintiff to a different unit. Plaintiff's claim is based upon a January 7, 2007 kite sent to Kipp, in which plaintiff asked "why did you move me to 10-1-75 [the different unit]." Amend. Compl. at p. 9; Kite attached as Exh. V to Compl. (docket no. 1-2). ADW Kipp responded, "Too many kites, grievances, complaint between you and RUO Simpson, no progress for resolution." *Id.* Plaintiff's retaliation claim fails because even if ADW Kipp transferred him to another unit due to filing grievances, the move to another unit within the correctional facility was not an adverse action necessary to support a retaliation claim. *See* discussion in § III.B.2., *supra.* Plaintiff has presented no evidence that his transfer affected any federal constitutional right. Accordingly, ADW Kipp is entitled to summary judgment on plaintiff's retaliation claim.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 30) be **GRANTED**.

Dated: July 19, 2010                               /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).